Slip Op. 13-71

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                                  :
SINCE HARDWARE (GUANGZHOU)                        :
CO., LTD.,                                         :
                                                  :
          Plaintiff,                              :
                                                  :
                    v.                            :       Before: Richard K. Eaton, Judge
                                                  :
UNITED STATES,                                     :       Court No. 09-00123
                                                  :
          Defendant,                              :
                                                  :
             and                                  :
                                                  :       PUBLIC VERSION
HOME PRODUCTS INTERNATIONAL,                      :
INC.,                                             :
                                                  :
          Defendant-Intervenor.                   :
_____           :

OPINION and ORDER

[Plaintiff's motion for judgment on the agency record is granted, and the matter is remanded to the Department of Commerce.]

Dated: May 31, 2013

     *William E. Perry*, Dorsey & Whitney LLP, of Seattle, WA, argued for plaintiff. With him on the brief were *Emily Lawson* and *Derek A. Bishop*.

     *Michael D. Snyder*, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant. With him on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Rachael Wenthold Nimmo*, Senior Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington D.C.

     *Frederick L. Ikenson,* Blank Rome LLP, of Washington D.C., argued for defendant-intervenor. With him on the brief was *Larry Hampel*.

Eaton, Judge:  Before the court is the Department of Commerce's (the "Department" or "Commerce") Second Final Results of Redetermination Pursuant to Remand, dated May 29, 2012 (ECF Dkt. No. 133) ("Second Remand Results").  On remand, Commerce was instructed to reconsider whether Since Hardware (Guangzhou) Co., Ltd. ("Since Hardware" or "plaintiff") qualified for separate-rate status in connection with the antidumping duty order on floor-standing, metal-top ironing tables and certain parts thereof from the People's Republic of China ("PRC") and, if eligible, to determine the appropriate rate.

In the Second Remand Results, Commerce (1) determined that Since Hardware was entitled to separate-rate status, and (2) assigned a rate of 157.68%, applying adverse facts available ("AFA").[1]  Plaintiff and defendant-intervenor, Home Products International, Inc. ("defendant-intervenor"), filed comments to the Second Remand Results.

STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i) (2006).

---

[1]      The Department generally makes its antidumping determinations based on the information it solicits and receives from interested parties concerning the normal value and export price of the subject merchandise.  Commerce may, however, rest its determinations on "facts otherwise available . . . to fill in the gaps when [it] has received less than the full and complete facts needed to make a determination."  *Gerber Food (Yunnan) Co., Ltd. v. United States,* 29 CIT 753, 767, 387 F. Supp. 2d 1270, 1283 (2005) (quoting *Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1381 (Fed. Cir. 2003)).  Having determined that the use of facts otherwise available is warranted, the Department further finds that "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information . . . [Commerce] may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  19 U.S.C. § 1677e(b).

DISCUSSION

I.    Background

This matter is before the court on plaintiff's challenge to the Department's final results of

the third administrative review of the antidumping duty order on floor-standing, metal-top ironing

tables and certain parts thereof from the PRC for the period of review ("POR") August 1, 2006

through July 31, 2007.  *See* Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof

from the PRC, 74 Fed. Reg. 11,085 (Dep't of Commerce March 16, 2009) (final results of

antidumping administrative review) and the accompanying Issues & Decision Memorandum

(collectively, the "Final Results").

In the Final Results, Commerce found that Since Hardware's reporting of the cost and

origin of its production inputs was fraudulent in several respects, that the fraud significantly

impeded the Department's investigation, and that Since Hardware, by providing that fraudulent

information, failed to cooperate in the review to the best of its ability.  Based on these findings, the

Department determined it was appropriate to apply AFA.  Commerce applied AFA both to Since

Hardware's cost and origin information and to the information that the company provided relating

to its independence from the PRC government.  In so doing, Commerce determined that Since

Hardware could not demonstrate its entitlement to separate-rate status and assigned the PRC-wide

antidumping duty rate of 157.68%.  In *Since Hardware I*, the court sustained Commerce's

determination not to rely on the input data, but also found that the input data was not "relevant to

the question of government control" and remanded with instructions to "reexamine the record" and

redetermine whether Since Hardware was entitled to a separate rate.  *Since Hardware*

*(Guangzhou) Co. v. United States*, 34 CIT __, __, Slip Op. 10-108, at 15, 22 (2010) (*Since*

*Hardware I*).

In the First Remand Results the Department again determined that application of AFA to

Since Hardware's separate rate submissions was warranted and continued to apply the PRC-wide

rate to its products.  Remand Results (ECF Dkt. No. 108) (Dep't of Commerce Feb. 17, 2011)

("First Remand Results").  The Department found that "a critical nexus between certain statements

made by Since Hardware and the company's books and records" made it impossible for

Commerce to verify two de facto independence criteria.[2]  First Remand Results at 6.  Therefore,

the Department applied AFA to Since Hardware's responses concerning its de facto independence

from government control.  First Remand Results at 6.  The court found the Department's

independence determination contrary to law and unsupported by substantial evidence and again

remanded the case, instructing Commerce to "reexamine its conclusion . . . [as to] de facto

independence" and Since Hardware's entitlement to a separate rate.  *Since Hardware (Guangzhou)*

*Co., Ltd. v. United States,* 35 CIT __, __, Slip. Op. 11-146, at 29 (2011) (*Since Hardware II*).  It

further ordered that if Commerce determined that plaintiff was entitled to a separate rate,

Commerce must determine that rate.  *Id.* at __,  Slip. Op. 11-146, at 30.


II.    The Second Remand Results

The Department made two determinations in the Second Remand Results, which was

conducted under protest.  Second Remand Results at 4 n.1.  The first is that Since Hardware is

"entitled to a separate rate."  Second Remand Results at 1–2, 4–5.  No party challenges this

---

[2]        In particular, the Department found that it could not verify "whether export prices are set by or are subject to the approval of a government agency" and "whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses."  *See* First Remand Results at 6–11.

determination and it is sustained.

Commerce then assigned Since Hardware a rate of 157.68% based on the application of AFA.  Second Remand Results at 2.  The Department justified its use of AFA by reference to the court's holding in *Since Hardware I* that "'Commerce acted reasonably in determining it could not rely on any of the company's financial information.'"  Second Remand Results at 5 (quoting *Since Hardware I*, 34 CIT at __, Slip Op. 10-108, at 22).

To support its finding that a rate of 157.68% was "both reliable and relevant" the Department first argues that the selected rate was reliable because it "was calculated for another cooperative respondent in the investigation."  Second Remand Results at 7–8 (citation omitted).  Commerce thus contends that because the selected rate was calculated for a respondent from verified information in the investigation, and "no information has been presented that calls into question the reliability of the selected rate," that "it is not necessary to question the reliability of the margin."  Second Remand Results at 8.

Commerce further claims that the rate is relevant because (1) it was a calculated rate from another respondent during the investigation and thus reflects the commercial reality of another respondent in the same industry, and (2) it was corroborated by data derived from imports of the subject merchandise into the United States during the POR ("Customs Data") which "indicate that importers are paying this rate . . . and exporters subject to this rate are nevertheless able to sell ironing tables to the United States at this rate."  Second Remand Results at 9.  In reaching its finding, Commerce rejected plaintiff's claim that the data used to corroborate the rate contained an insufficient number of data points.  In doing so, the Department stated "that the quantity of exports at the selected AFA rate is [ir]relevant for corroboration purposes."  Second Remand Results at 14.

In addition, the Department expressly declined to use a rate calculated for Since Hardware in a prior proceeding because, as in this review, "Since Hardware's submissions in those proceedings were subsequently determined to be tainted by material fraud." Second Remand Results at 10. The Department also rejected the suggested use of the margins calculated for Since Hardware in two subsequent reviews because "the information provided during those reviews . . . was unavailable to the Department at the time it conducted the underlying proceeding." Second Remand Results at 15. According to Commerce, considering margins calculated in subsequent reviews would depart from its practices of "limit[ing] its examination on remand to the original administrative record" and where more information is necessary "limit[ing] consideration to information that was available at the time the original decision was made." Second Remand Results at 15.

Commerce also expressly declined to reopen the record to gather more information from Since Hardware from which it could calculate a rate specific to the company. The Department interpreted the court's order as not providing "Since Hardware [with] a second opportunity to provide data that it failed to produce in a timely manner during the underlying proceeding." Second Remand Results at 13. Thus, for Commerce, permitting plaintiff to place additional data on the record here "would set an untenable precedent of allowing a respondent that submitted fraudulent information during the administrative review a second opportunity to alter its responses *post hoc*." Second Remand Results at 13.

III.    Analysis

Plaintiff objects to the Remand Results, arguing that (1) by declining to reopen the record to allow Since Hardware to submit additional information for use in calculating the company's

rate, the Department failed to follow the court's instructions, and (2) the 157.68% rate selected by

Commerce is not relevant to Since Hardware and unsupported by substantial evidence on the

record.

> a.   Opening the Record

First, plaintiff's position that Commerce was required to open the record to permit Since

Hardware to submit additional information from which the Department should have calculated the

company's rate stems from a misreading of the court's remand order.  Plaintiff points to the court's

instructions that "in the event the Department finds that Since Hardware is entitled to a separate

rate, it determine that rate . . . [and] that the Department may reopen the record to solicit any

information it determines to be necessary to make its determination."  *Since Hardware II*, 35 CIT

at __, Slip. Op. 11-146, at 30.  According to Since Hardware, this language required Commerce to

calculate an individual rate for the company and, if sufficient information was not on the record to

do so, to reopen the record to obtain that information.  Pl.'s Objections to Dep't of Commerce's

Second Remand Redetermination 5 (ECF Dkt. No. 137) ("Pl.'s Br.").

In *Since Hardware I* the court held that Commerce was entitled to "use . . . AFA to assign a

dumping rate" to the company as a consequence of the absence of useable evidence on the record

resulting from Since Hardware's "forged and altered" submissions.  *Since Hardware I*, 34 CIT at

__, Slip Op. 10-108, at 20.  Therefore, the court anticipated the use of AFA by Commerce when

determining the company's rate and nothing in the order indicated that, when applying AFA, the

Department was prohibited from using any reasonable method for determining the company's rate.

Moreover, the language in the remand order expressly gave Commerce discretion as to whether or

not to reopen the record and as to what information it might do so for.  *Since Hardware II*, 35 CIT

at __, Slip. Op. 11-146, at 30 ("[T]he Department *may* reopen the record to solicit any information

*it determines to be necessary* to make its determination." (emphasis added)).  Since Hardware had

the chance to place truthful information on the record during the underlying review.  The

company's decision to provide fraudulent information, and thus not to cooperate fully with the

Department during the review, ended that opportunity.

Plaintiff's papers before the court incorporate by reference the arguments presented in its

comments to the Department's draft remand results.  There, plaintiff also argues that "Commerce

should look to the data provided by Since Hardware in the other most recent segment in which it

participated . . . the 2007–2008 and 2008–2009 reviews where there is no allegation" of fraud.

Pl.'s Br., Ex. 2, at 9 (ECF Dkt. No. 137-1).  Because "the most recent segment" took place after the

review at issue here, that data is not on the record and the Department could not have considered it

when it made its determination; And, as noted, nothing in this court's order directed that the

Department must reopen the record.  *See Yama Ribbons & Bows Co. v. United States*, 36 CIT __,

__, 865 F. Supp. 2d 1294, 1298 (2012) ("Commerce must base its decisions on the record before it

in each individual investigation."); *Zhejiang Native Produce and Animal By-Products Imp. & Exp.*

*Grp. Corp. v. United States*, 32 C.I.T. 673, 687 (2008) ("Commerce's determination must be based

on record evidence.").  Accordingly, this argument fails.

### b.  Corroboration

On remand, Commerce selected a rate calculated for a cooperating competitor of Since

Hardware during the initial investigation, which took place from October 1, 2002 to March 31,

2003.  A rate calculated in the final determination of an investigation may be appropriate

"secondary information" which Commerce may use in assigning an AFA rate.  *See* Statement of

Administrative Action Accompanying Uruguay Round Agreements Act, H.R. Doc. No. 103-316

at 870, *reprinted* in 1994 U.S.C.C.A.N. 4040, 4199 (1994) ("Secondary information is information

derived from the petition that gave rise to the investigation or review, the final determination

concerning the subject merchandise, or any previous review under section 751 concerning the

subject merchandise."); *KYD, Inc. v. United States*, 607 F.3d 760, 765 (Fed. Cir. 2010) (describing

secondary information as information not obtained in the course of the subject investigation or

review); *see, e.g.*, *Tianjin Magnesium Int'l Co. v. United States*, 35 CIT ___, ___, Slip. Op.

11-100, at 7–8 (2011); *Washington Int'l Ins. Co. v. United States*, 33 CIT __, __, Slip. Op. 09-78,

at 21–24 (2009); *Chia Far Indus. Factory Co. v. United States*, 28 CIT 1336, 1358–59, 343 F.

Supp. 2d 1344, 1365–66 (2004) (noting that a rate calculated for another party in the initial

investigation is secondary information); *Kompass Food Trading Int'l v. United States*, 24 CIT 678,

682 (2000) (treating a margin assigned to an individual respondent in the initial investigation as

secondary information).

  To support its selection of a particular rate, "Commerce must . . . demonstrate that the rate

is reliable and relevant to the particular respondent" and "show that it used reliable facts that had

some grounding in commercial reality." *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 36 CIT

___, ____, Slip. Op. 12-83, at 6–7 (2012) (citations and internal quotation marks omitted) (*Tianjin

II*); *see also KYD*, 607 F.3d at 765 ("Before Commerce can rely on secondary information, it must

establish that the 'secondary information to be used has probative value.'" (citation omitted)).

When Commerce "relies on secondary information" to select an AFA rate, it must, "to the extent

practicable," corroborate that rate using "information from independent sources[3] that are

---

   3  The "independent sources" requirement should not be conflated with the use of
"secondary information."   Secondary information is information not obtained during the course of

( continued . . . )

reasonably at [its] disposal." 19 U.S.C. § 1677e(c).  Put another way, when selecting an AFA rate

based on secondary information, the Department must, to the extent practicable, use independent

sources to demonstrate both the reliability of the selected rate and the relevance of the selected rate

to the respondent currently under review.

      To demonstrate relevance, the Department must show that the selected rate is "a

reasonably accurate estimate of the respondent's actual rate" by "show[ing] some relationship

between the AFA rate and the actual dumping margin." *F.lli De Cecco di Filippo Fara S. Martino*

*S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000); *Gallant Ocean (Thai.) Co. v. United*

*States*, 602 F.3d 1319, 1325 (Fed. Cir. 2010).  Thus, the selected rate "should bear a rational

relationship to [the] respondent's commercial reality." *Dongguan Sunrise Furniture Co. v. United*

*States*, 37 CIT ___, ___, Slip Op. 13-46, at 6 (2013) (citation omitted); *see Gallant Ocean*, 602

F.3d at 1323.

      As an initial matter, the Department has sufficiently demonstrated the reliability of the rate.

An AFA rate selected from a prior review will be found sufficiently reliable where it is for the

"same categor[y] of merchandise," it is "based on verified information taken from similar

companies," it has "not been found either unsupported by substantial evidence nor contrary to law

by any court," and where it is not "challenged by any record evidence." *Shandong Mach. Imp. &*

*Exp. Co. v. United States*, 33 CIT ___, ____, Slip. Op. 09-64, at 17 (2009).  The selected rate,

---

( . . . continued )

the instant review and from which a selected rate is derived.  Independent sources are the
information that must be used to show that a selected rate based on secondary information is both
reliable and relevant.

initially assigned to Shunde Yongjian Housewares Co., Ltd., was calculated from verified

information for the same type of merchandise during the investigation stage of the current

proceedings.  *See* Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof From the

PRC, 69 Fed. Reg. 35,296, 35,297, 35,312 (Dep't of Commerce June 24, 2004) (notice of final

determination of sales at less than fair value); Floor-Standing, Metal-Top Ironing Tables and

Certain Parts Thereof from the PRC, 69 Fed. Reg. 47,868 (Dep't of Commerce Aug. 6, 2004)

(notice of amended final determination of sales at less than fair value and antidumping duty order).

Plaintiff has neither placed evidence on the record to challenge the reliability of the selected rate,

nor pointed to any court's holding declaring the selected rate to be unreliable.  Thus, Commerce

has sufficiently demonstrated reliability.

        The Department, however, has failed to demonstrate relevance.  As noted, when the

Department relies on "calculated rates from previous reviews, rather than information obtained in

the course of a current investigation or review, the Department must, to the extent practicable,

corroborate that information from independent sources that are reasonably at [its] disposal."

*Shandong Mach.*, 33 CIT at ___, Slip. Op. 09-64, at 11–12 (citations and internal quotation marks

omitted).  In doing so, the Department must demonstrate some rational relationship between the

selected rate and Since Hardware's own commercial reality.  *Dongguan Sunrise Furniture*, 37 CIT

at __, Slip Op. 13-46, at 6.  That the Department has calculated a rate for another respondent in a

prior segment of the proceeding is not, standing alone, evidence sufficient to support a finding of

relevance of that rate to a different respondent in a later review.[4]  *Foshan Shunde Yongjian*

_____

        [4]        This is not a case where the *Rhone Poulenc* presumption that the highest prior
margin is probative applies.  *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990).

                                                                                ( continued . . . )

*Housewares & Hardware Co. v. United States*, 37 CIT ___, ___, Slip Op. 13-47, at ___ (2013).  A

rate assigned for a different respondent several years earlier, without more, is simply not probative

of whether a selected rate is "'a *reasonably accurate estimate* of [a] respondent's actual rate'" in

the current review.  *Gallant Ocean*, 602 F.3d at 1323 (quoting *De Cecco*, 216 F.3d at 1032).  Thus,

despite defendant's claims to the contrary, the rate calculated for another company in the

investigation some three years earlier does not necessarily reflect the commercial reality of

plaintiff in this review.

Moreover, this is not an instance where the Department maintains that it was impracticable

to refer to independent sources to demonstrate the relevance of the selected rate.  It is clear that

there were independent sources available to the Department from which it could practicably

corroborate a selected rate.  Indeed, the Department has attempted to rely on an independent source

to corroborate its chosen rate, namely the Customs Data.  This type of data may serve as a means of

corroboration.  19 C.F.R. § 351.308(d) (2009) (defining "official import statistics and customs

data" as exemplars of "independent sources").  The Department thus argues that, because the

Customs Data contained some entries of subject merchandise imported at the selected rate, the

Customs Data provided "some corroboration" of the rate's relevance.

The Customs Data, however, contains a very small number of arguably relevant entries.  In

---

( . . . continued )

Not only does that presumption not "replace actual corroboration . . . . [T]he Federal Circuit
appears to restrict its use to situations where a respondent has not answered Commerce's
questionnaire at all, rather than when the questionnaire responses were found wanting for one
reason or another."  *Tianjin Mach. Imp. & Exp. Co. v. United States*, 35 CIT __, __, 752 F. Supp.
2d 1336, 1348 (2011).  Here, Since Hardware responded to the Department's questionnaires, if
fraudulently.

addition, taken as a whole, it is unclear how the Customs Data supports the Department's

conclusions.[5]   In reply to Since Hardware's objection that the Customs Data reflected too few

entries to corroborate the selected rate, Commerce found that the size of the sample to be irrelevant

for corroboration purposes.  Second Remand Results at 14 ("We disagree that the quantity of

exports at the selected AFA rate is relevant for corroboration purposes, as there is no requirement

that the selected source of AFA must be based upon a specified amount of sales volume.").  In

other words, the Second Remand Results do not meaningfully address whether the number of

entries underlying the Customs Data adequately demonstrates the relevance to Since Hardware of

an AFA rate of 157.68%.

        Contrary to the Department's position, however, the size of the data set relied upon may be

relevant to whether an AFA rate is sufficiently corroborated.  *Dongguan Sunrise Furniture*, 37

CIT at __, Slip Op. 13-46, at 6 ("Here Commerce has based [respondent's] rates on an

impermissibly small percentage of sales."); *Lifestyle Enter., Inc., v. United States*, 36 CIT __, at__,

865 F. Supp. 2d 1284, at 1289 (2012) (*Lifestyle II*) ("Selection of an AFA rate based on miniscule

data will not suffice."); *Lifestyle Enter., Inc., v. United States*, 36 CIT ___, ___, 844 F. Supp. 2d

_____

        [5]        The quantity of the exports represented by the Customs Data is truly miniscule.
The data reflects only [[    ]] importations of goods at the selected rate under the tariff headings
covered by the order: 9403.20.0011 and 9403.90.8041.  Those imports had [[
                            ]] which is not specifically defined in the data but presumably
represents the value of the cash-deposit.
        The other entries in the Customs Data at the selected rate are [[
                        ]].  The court is at a loss as to how the antidumping rates applied to the importation
of articles such as [[                                    ]] can demonstrate that the selected rate is relevant
to respondent's commercial reality [[                                        ]].  The Customs Data also contains
numerous [[

        ]].

1283, 1289 (2012) (*Lifestyle I*) ("Facts specific to a particular case may make transactions

representing a small percentage of sales inadequate corroboration."); *Tianjin Mach. Imp. & Exp.*

*Co. v. United States*, 35 CIT __, at__,752 F. Supp. 2d 1336, at 1352 (2011) (*Tianjin I*) (rejecting

the use of a small number of third party transactions as corroboration); *cf. Gallant Ocean*, 602 F.3d

at 1324 ("Because Commerce did not identify any relationship between the small number of

unusually high dumping transactions with [petitioner's] actual rate, those transactions cannot

corroborate the adjusted petition rate."); *see also Yangzhou Bestpak Gifts & Crafts Co. v. United*

*States*, Appeal No. 2012-1312, at 17 (Fed. Cir. May 20, 2013) ("What could have been a

coincidental correlation of the three data points is not enough to be substantial supporting evidence

of commercial reality.").  Thus, the probative value of the Customs Data can clearly be influenced

by the sample size.

      Further, the Customs Data reveals more than simply a handful of entries of subject

merchandise imported at the selected rate.  It also contains a number of entries of subject

merchandise liquidated at less than Commerce's selected rate.  More, the data also covers a mix of

other clearly non-subject products, some of which were imported at the selected rate.  The

Department provides no meaningful explanation of either the rate discrepancies, or why the rates

applied to these other non-subject products were probative of Since Hardware's commercial

reality.  Instead, it ignores them, stating only that they "reveal a number of entries [that] were

liquidated at 157.68 percent, and that these entries included subject merchandise."  Second

Remand Results at 14; *see also* Remand Analysis Memo of Final Remand Results, Pl.'s Br., Conf.

Ex. 3, at 1–2.  Importantly, this explanation fails to give any significance to the fact that only [[    ]]

listed entries are for merchandise covered by the order and that the majority of entries at the chosen

rate were for non-subject merchandise.

        In order to meet its burden of corroboration, the Department must use probative data "that

indicates what [a respondent's] individually calculated margin might be." *Yangzhou Bestpak*,

Appeal No. 2012-1312, at 17; *Lifestyle I*, 36 CIT at ___, 844 F. Supp. 2d at 1288 ("Commerce

corroborated the rate with data that were not probative and therefore the rate is not supported by

substantial evidence.").  Where the Department relies on Customs import information to

corroborate a rate, in order to demonstrate relevance it must point to some record evidence

indicating either that the data reflects a commercially meaningful quantity of the subject

merchandise or that there are "additional facts that make the small [quantity] less troubling."

*Lifestyle II*, 36 CIT at ___, 865 F. Supp. 2d at 1290 (citations omitted).

        In addition, Commerce's determinations "must include 'an explanation of the basis for its

determination.'" *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1320 (Fed. Cir. 2009) (citing 19

U.S.C. 1677f(i)(3)(A)).  Surely, questions relating to (1) the significance of subject merchandise

entered at rates much lower than the selected rate, and (2) the partial reliance on rates applied to

clearly non-subject merchandise require an explanation.  Where the Department has reached

important conclusions that are not fully explained with reference to record evidence, remand is

appropriate for Commerce to "'explain its rationale . . . such that a court may follow and review its

line of analysis, its reasonable assumptions, and other relevant considerations.'" *Clearon Corp. v.*

*United States*, 35 CIT __, __, Slip Op. 11-142, at 27–28 (2011) (quoting *Allegheny Ludlum Corp.*

*v. United States*, 29 CIT 157, 168, 358 F. Supp. 2d 1334, 1344 (2005)).  Here, Commerce has

failed to explain its rationale for not taking into account the entries of subject merchandise

liquidated at rates less than the selected rate or for relying on liquidation rates for entries of

non-subject merchandise.

Accordingly, because the Department has not explained why the size of the Customs Data is sufficient to demonstrate the relevance of the selected rate to Since Hardware, its determination that the selected rate is corroborated and that the requirements of 19 U.S.C. § 1677e(c) have been met, is not supported by substantial evidence and must be remanded for further explanation.  Also, remand is warranted because Commerce has failed to provide a convincing explanation as to why the evidence it has presented is sufficient to corroborate its selected rate.

CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

ORDERED that plaintiffs' motion for judgment on the agency record is GRANTED, and Commerce's Final Results are REMANDED; it is further

ORDERED that, on remand, Commerce shall issue a redetermination that complies in all respects with this Opinion and Order, is based on determinations that are supported by substantial record evidence, and is in all respects in accordance with law; it is further

ORDERED that the Department shall explain why the Customs Data represents a sufficiently large number of entries to demonstrate the relevance of the selected rate or shall otherwise corroborate its selected rate in a manner supported by substantial evidence and in accordance with law; it is further

ORDERED that the Department shall explain with specificity why the rates for products other than subject merchandise tend to corroborate the selected rate and the significance, if any, of the subject merchandise being entered at rates below the selected rate; it is further

ORDERED that should the Department continue to rely upon the Customs Data, it shall explain with specificity why the Customs Data demonstrates that the selected rate is relevant to

Court No. 09-00123                                                                    Page 17

Since Hardware, and either identify record evidence indicating that the Customs Data represents a

relevant quantity of exports of the subject merchandise or reopen the record to place such

additional evidence thereon; it is further

ORDERED that Department may reopen the record to solicit any information it finds to be

necessary to make its determination; it is further

ORDERED that the remand results shall be due on September 30, 2013; comments to the

remand results shall be due thirty (30) days following filing of the remand results; and replies to

such comments shall be due fifteen (15) days following filing of the comments.



/s
Richard K. Eaton

Dated:          May 31, 2013
                New York, New York