Slip Op. 16-42

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| SINCE HARDWARE (GUANGZHOU) CO., LTD., | : | |
| Plaintiff, | : | |
| v. | : | |
| UNITED STATES, | : | Before: Richard K. Eaton, Judge |
| Defendant, | : | Court No. 09-00123 |
| and | : | |
| HOME PRODUCTS INTERNATIONAL, INC., | : | |
| Defendant-Intervenor. | : | |

**<u>OPINION and ORDER</u>**

[The United States Department of Commerce's Final Results of Redetermination are sustained.]

Dated: April 28, 2016

 *William E. Perry*, Dorsey & Whitney LLP, of Seattle, WA, argued for plaintiff. With him on the brief was *Emily Lawson*.

 *Michael D. Snyder*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Amanda T. Lee*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

 *Frederick L. Ikenson*, Blank Rome LLP, of Washington, D.C., argued for defendant-intervenor. With him on the brief was *Larry Hampel*.

EATON, Judge:  Before the court are the objections of plaintiff Since Hardware (Guangzhou) Co., Ltd. ("Since Hardware") to the United States Department of Commerce's ("the Department" or "Commerce") Fourth Final Results of Redetermination Pursuant to Court Remand (Second Corrected Version) dated June 18, 2015 (ECF Dkt. No. 202-2) ("Fourth Remand Results").  On remand, Commerce was instructed to demonstrate why the rate of 157.68 percent assigned to Since Hardware based on adverse facts available ("AFA") was relevant to the company and reflected its commercial reality, or to select and properly corroborate a new rate. *Since Hardware (Guangzhou) Co. v. United States* (*Since Hardware IV*), 39 CIT __, Slip Op. 15-15, at 24–26 (Feb. 18, 2015).

In the Fourth Remand Results, Commerce states that it was unable to corroborate[1] the 157.68 percent rate, and instead selected a new rate of 72.29 percent, the rate assigned to the separate-rate respondents in the underlying less-than-fair-value investigation ("the

---

[1] During the pendency of this case, the Trade Preferences Extension Act of 2015 was signed into law, which, among other things, amends the corroboration requirement under 19 U.S.C. § 1677e.  *See* Pub. L. No. 114-27, 129 Stat. 362 (2015).  Specifically, § 502 of the Act modifies the provisions pertaining to the selection and corroboration of AFA rates.  As is relevant here, the revised corroboration requirement under § 1677e(c) now contains an exception under which Commerce is not "required to corroborate any dumping margin . . . applied in a separate segment of the same proceeding." 19 U.S.C. § 1677e(c)(2) (2015).  In addition, the Act provides that when Commerce uses AFA, it "may . . . use any dumping margin from any segment of the proceeding under the applicable antidumping order . . . including the highest such rate or margin."  *Id.* § 1677e(d)(1)–(2).  Further, for purposes of corroborating an AFA rate, Commerce is no longer required "to estimate what the . . . dumping margin would have been if the interested party found to have failed to cooperate . . . had cooperated," or "to demonstrate that the . . . dumping margin used by [Commerce] reflects an alleged commercial reality of the interested party."  *Id.* § 1677e(d)(3).  As the Federal Circuit recently noted, however, "the amendments do not apply to final determinations that Commerce made prior to the date of enactment."  *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337 n.2 (Fed. Cir. 2016) (citing *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1348–52 (Fed. Cir. 2015)); *see also Fresh Garlic Producers Ass'n v. United States*, 39 CIT __, __, 121 F. Supp. 3d 1313, 1332 (2015) ("To apply § 502 on remand would be in effect to apply the law retroactively by applying it to a determination that occurred before the new law became effective.").

Investigation"). Fourth Remand Results at 4–5. Since Hardware challenges this rate, arguing it was not properly corroborated. *See* Pl.'s Objs. to Fourth Remand Results (ECF Dkt. No. 208). Defendant-intervenor, Home Products International, Inc. ("HPI"), also objects to the rate, claiming that Commerce's selection of a new rate disregarded the court's instructions in *Since Hardware IV*. *See* Comments of HPI on Fourth Remand Results (ECF Dkt. No. 206).

## BACKGROUND

**I. THE FINAL RESULTS**

This matter was originally before the court on Since Hardware's challenge to the Department's Finals Results of the Third Administrative Review of the antidumping duty order on floor-standing metal-top ironing tables and certain parts thereof from the People's Republic of China ("PRC"). *See Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the PRC*, 74 Fed. Reg. 11,805 (Dep't of Commerce Mar. 16, 2009) (final results of antidumping duty administrative review) ("Final Results"). The period of review ("POR") was August 1, 2006 through July 31, 2007. In the Final Results, Commerce determined that Since Hardware significantly impeded the Department's investigation by fraudulently reporting the cost and origin of its inputs. *Id.* at 11,086. As a result of the company's failure to cooperate,[2] Commerce applied AFA when selecting from among the available facts, and thus drew inferences adverse to Since Hardware as to its reported cost and origin data. In addition, Commerce used these deficiencies as a basis to disregard the information the company offered to demonstrate its

---

[2] "If Commerce finds that a respondent has 'failed to cooperate by not acting to the best of its ability to comply with a request for information,' the statute permits the agency to draw adverse inferences commonly known as 'adverse facts available' when selecting from among the available facts." *Nan Ya Plastics*, 810 F.3d at 1338 (quoting 19 U.S.C. § 1677e(b) (2006)).

independence from the PRC government.[3] Because, for Commerce, Since Hardware could not establish independence from the PRC Government, it assigned plaintiff the PRC-wide antidumping duty rate of 157.68 percent. *See* Final Results, 74 Fed. Reg. at 11,806.

In *Since Hardware I*, the court sustained Commerce's determination to apply AFA as to Since Hardware's input data, but found the input data was not "relevant to the question of government control." *Since Hardware (Guangzhou) Co. v. United States* (*Since Hardware I*), 34 CIT __, __, Slip Op. 10-108, at 15 (Sept. 27, 2010). The court therefore remanded the question of whether Since Hardware was entitled to a separate rate.

### II. THE FIRST REMAND RESULTS

In the First Remand Results, issued on February 17, 2011, Commerce continued to apply AFA to Since Hardware's separate-rate submissions, citing its inability to verify the company's de facto independence data. First Results of Redetermination Pursuant to Court Order (ECF Dkt. No. 108) ("First Remand Results"). The Department therefore again assigned the PRC-wide rate to Since Hardware. *Id.* at 2.

The court found the Department's position was unsupported by substantial evidence, pointing to additional information and procedures Commerce could have used to verify the de facto independence information. *Since Hardware (Guangzhou) Co. v. United States* (*Since Hardware II*), 35 CIT __, __, Slip Op. 11-146, at 14–17, 20–29 (Nov. 29, 2011). Accordingly,

---

[3] In reviews involving merchandise from a non-market economy country, such as the PRC, Commerce presumes all respondents are government-controlled, and therefore subject to a single country-wide duty rate. *Ad Hoc Shrimp*, 802 F.3d at 1353. "Respondents may rebut this presumption and become eligible for a separate rate by establishing the absence of both de jure and de facto government control. If a respondent fails to establish its independence, Commerce relies upon the presumption of government control and applies the country-wide rate to that respondent." *Id.* (citation omitted).

the court remanded the First Remand Results, instructing Commerce to reexamine its conclusions regarding Since Hardware's entitlement to a separate rate. *Id.* at 29–30. Further, if upon reexamination Commerce found that Since Hardware was entitled to a separate rate, the court instructed the Department to determine that rate. *Id.* at 30.

### III. THE SECOND REMAND RESULTS

In the Second Remand Results, issued on November 29, 2011, Commerce determined, under protest, that Since Hardware was "entitled to a separate rate." Second Final Results of Redetermination Pursuant to Court Order 1, 4–5 (ECF Dkt. No. 133) ("Second Remand Results"). This determination was not challenged by the parties, and is therefore no longer an issue in this litigation. Having determined Since Hardware was eligible for a separate rate, the Department assigned the company a separate rate of 157.68 percent using AFA. *Id.* at 2.

Commerce offered several reasons why this rate was "both reliable and relevant," and therefore properly corroborated. *Id.* at 7. The Department asserted the rate was relevant because it was a calculated rate for another respondent in the same investigation. *Id.* Furthermore, to corroborate its selected rate, Commerce used data from the United States Customs and Border Protection Agency ("Customs") for imports of ironing tables from non-party producers and exporters that entered the United States during the POR ("the Customs Data"). *Id.* at 8–9. The Department explained that, because other companies were able to conduct business at the 157.68 percent rate, the rate was representative of "commercial reality." *Id.* at 9.

Commerce also declined to use a rate calculated for Since Hardware in a prior proceeding because the company's submissions "were subsequently determined to be tainted by material fraud." *Id.* at 10. In addition, the Department refused to use margins calculated for Since

Hardware in two subsequent reviews because that information was not available at the time the Department conducted the proceeding. *Id.* at 15–16. Commerce also expressly declined to reopen the record to gather more information from which to calculate a rate specific to Since Hardware. *Id.* at 13.

In *Since Hardware III*, the court sustained Commerce's determination that the 157.68 percent rate was reliable, but found the Department failed to demonstrate the relevance of this rate to Since Hardware's "commercial reality." *Since Hardware (Guangzhou) Co. v. United States* (*Since Hardware III*), 37 CIT __, __, Slip Op. 13-71, at 11–12 (May 31, 2013). Specifically, the court questioned Commerce's use of the Customs Data to corroborate the rate, because the data represented a small number of entries. *Id.* at 13–14. Accordingly, the court once again remanded, instructing Commerce to "explain why the Customs [D]ata represents a sufficiently large number of entries to demonstrate the relevance of the selected rate or . . . otherwise corroborate its selected rate in a manner supported by substantial evidence and in accordance with law." *Id.* at 16.

IV. **THE THIRD REMAND RESULTS**

Commerce then issued its Third Results of Redetermination Pursuant to Court Order (ECF Dkt. No. 169) ("Third Remand Results"), wherein it determined its selected rate of 157.68 percent was corroborated, to the extent practicable, by information from independent sources. Third Remand Results at 3. In *Since Hardware IV*, the court remanded the Third Remand Results, finding Commerce's determination to continue to use the AFA rate of 157.68 percent remained unsupported by substantial evidence. *Since Hardware IV*, 39 CIT at __, Slip Op. 15-15, at 23 ("Merely stating that the Department has not identified other sources that support its

assessment is an inadequate explanation to support the conclusion that the Customs Data is the only information relevant to Since Hardware.").

Accordingly, the court ordered the Department to: (1) "support the rate assigned to Since Hardware by demonstrating that the information has some grounding in the commercial reality of plaintiff during the POR"; (2) discontinue its reliance "on the presumption that, because the 157.68 percent rate had already been calculated in a prior segment of the proceeding at the time Since Hardware took the risk of providing unreliable, incomplete, and unusable data, it could have anticipated the assignment of that rate, to corroborate the assigned rate to Since Hardware" (i.e., the *Rhone Poulenc* presumption), *see Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990); and (3) if it continued to rely upon the Customs Data, "clarify all apparent inconsistencies in the data and conclusively establish the cash-deposit rate for the relevant entries," and "explain with specificity": (a) why the cash-deposit rates for other market participants tend to corroborate the selected rate,[4] (b) "why the Customs Data represents a

---

[4] With regard to cash-deposit rates, as explained in a related case, *Foshan Shunde Yongjian Housewares & Hardware Co. v. United States*,

> after an investigation results in the issuance of an antidumping duty order, Commerce directs Customs to collect *estimated* antidumping duties (i.e., cash deposits) on entries of merchandise subject to the order. These deposit rates, however, are only estimates of the eventual liability to which importers might be subject for entries of merchandise that are covered by an antidumping duty order. As frequently noted by this Court, the antidumping duty regime is retrospective in nature, and interested parties may request annual reviews to better approximate their duty rates for a period of time that has already ended. Hence, in the event a review results in a rate that differs from the cash deposit rate, an importer's liability may require an adjustment.

*Foshan Shunde Yongjian Housewares & Hardware Co. v. United States*, 40 CIT __, __, Slip Op. 16-35, at 25 (Apr. 7, 2016) (citing 19 U.S.C. §§ 1673b(d)(1)(B), 1675; 19 C.F.R. § 351.213). Accordingly, in *Since Hardware IV*, the court expressed its concern regarding whether the cash-deposit rates of other market participants could be used to corroborate the 157.68 percent rate assigned to Since Hardware. *Since Hardware IV*, 39 CIT at __, Slip Op. 15-15, at 25.

sufficient quantity of exports of the subject merchandise to be relevant to Since Hardware," and (c) "the significance, if any, of the subject merchandise being entered at rates below the selected rate." *Id.* at __, Slip Op. 15-15, at 24–25. The court also permitted the Department to "reopen the record to solicit any information it finds to be necessary to make its determination," and, if it did so, to "seek clarification and further information from [Customs] regarding the Customs Data and what the data represents." *Id.* at 25. The court also suggested Commerce could select a new rate for Since Hardware and corroborate that rate. *Id.*

## V.   THE FOURTH REMAND RESULTS

Commerce's approach in its Fourth Remand Results is largely identical to that employed in the related case, *Foshan Shunde Yongjian Housewares & Hardware Co. v. United States*, 40 CIT __, Slip Op. 16-35 (Apr. 7, 2016), which involves the subsequent (fourth) administrative review of the antidumping duty order at issue. Specifically, on remand, Commerce contends it searched for independent sources that would bear on the relevance of the 157.68 percent rate to Since Hardware, but, despite running internet searches and searching beyond the Customs Data, "found no additional information to potentially corroborate an AFA rate for Since Hardware." Fourth Remand Results at 4. Therefore, under protest, the Department assigned Since Hardware a revised AFA rate of 72.29 percent, which is the weighted average of the rates calculated for the two mandatory respondents in the Investigation (i.e., 157.68 percent and 9.47 percent). *Id.* at 4–5, 12–13. This rate was also the rate in effect for all separate-rate companies during the POR. *Id.* at 13. The Department explained this revised rate better addresses the court's concerns regarding "relevance" and "commercial reality" as compared to a single rate calculated for a single company. *Id.* at 13.

**STANDARD OF REVIEW**

"The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "'The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order.'" *Yantai Xinke Steel Structure Co. v. United States*, 38 CIT __, __, Slip Op. 14-38, at 4 (Apr. 9, 2014) (quoting *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014)).

**DISCUSSION**

**I.  LEGAL FRAMEWORK**

During administrative reviews, Commerce requests information from respondents, and if a respondent "withholds information that has been requested by [Commerce]," "fails to provide such information by the deadlines . . . or in the form and manner requested," "significantly impedes a proceeding," or "provides such information but the information cannot be verified," Commerce is permitted to "use the facts otherwise available" in making its determinations. 19 U.S.C. § 1677e(a)(2)(A)–(D). If Commerce further finds a respondent has "failed to cooperate by not acting to the best of its ability to comply with a request for information," then it "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available" (i.e., it may apply AFA). *Id.* § 1677e(b).

In selecting an AFA rate, Commerce may use information from the petition, the investigation, prior administrative reviews, or "any other information placed on the record." *Id.* § 1677e(b)(1)–(4); *see Gallant Ocean (Thai.) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) ("[I]n the case of uncooperative respondents," Commerce has discretion to "select

from a list of secondary sources as a basis for its adverse inferences."); *see also* Statement of Administrative Action Accompanying Uruguay Round Agreements Act, H.R. Doc. No. 103-316, at 870, *reprinted* in 1994 U.S.C.C.A.N. 4040, 4199 (1994) ("SAA")[5] ("Secondary information is information derived from the petition that gave rise to the investigation or review, the final determination concerning the subject merchandise, or any previous review under section 751 [(19 U.S.C. § 1675)] concerning the subject merchandise."). In addition, "in selecting a reasonabl[e] [AFA] rate, Commerce must balance the statutory objectives of finding an accurate dumping margin and inducing compliance, rather than creating an overly punitive result." *Timken Co. v. United States*, 354 F.3d 1334, 1345 (Fed. Cir. 2004).

When Commerce relies on secondary information, "rather than on information obtained in the course of an investigation or review," it "shall, *to the extent practicable*, corroborate that information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c) (emphasis added). "To corroborate secondary information, Commerce must find the information has 'probative value,' by demonstrating the rate is both reliable and relevant." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1354 (Fed. Cir. 2015) (quoting *KYD, Inc. v. United States*, 607 F.3d 760, 765 (Fed. Cir. 2010)) (citing *Gallant Ocean*, 602 F.3d at 1323–25); *see also F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("It is clear from Congress's imposition of the corroboration requirement in 19 U.S.C. § 1677e(c) that it intended for an adverse facts available rate to be a *reasonably accurate* estimate of the respondent's actual rate, albeit with some built-

---

[5] "[T]he SAA is 'an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application.'" *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1305 n.3 (Fed. Cir. 2001) (quoting 19 U.S.C. § 3512(d)).

in increase intended as a deterrent to non-compliance." (emphasis added)); *Hubscher Ribbon Corp. v. United States*, 38 CIT __, __, 979 F. Supp. 2d 1360, 1365 (2014) ("In practice 'corroboration' involves confirming that secondary information has 'probative value,' by examining its 'reliability and relevance.'" (citations omitted)). In other words, "Commerce must select secondary information that has some grounding in commercial reality." *Gallant Ocean*, 602 F.3d at 1324; *see also Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1343 (Fed. Cir. 2016) ("We clarify that 'commercial reality' and 'accurate' represent reliable guideposts for Commerce's determinations. Those terms must be considered against what the antidumping statutory scheme demands.").

Furthermore, the information used to corroborate a rate must bear some relationship to a particular respondent in order to satisfy the relevance requirement. *See Gallant Ocean*, 602 F.3d at 1323; *see also Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1384 (Fed. Cir. 2012) (Observing that "[b]ecause nothing in the record . . . tied the AFA rate . . . to [the respondent], we concluded that the AFA rate was unrelated to commercial reality and not a reasonabl[y] accurate estimate of [the respondent's] actual dumping, hence, not supported by substantial evidence.").

## II. THE DEPARTMENT'S SELECTION OF THE 72.29 PERCENT AFA RATE IS SUSTAINED

As noted, the Fourth Remand Results now before the court are largely identical to the Remand Results filed in *Foshan Shunde*, 40 CIT __, Slip Op. 16-35. In that case, the court stated:

> [F]ive holdings can be found in the remands in this case: (1) "the decision in *Rhone Poulenc* 'necessarily did not hold that the presumption could replace actual corroboration,'" and the presumption's use is limited to situations where the rate "was calculated in a prior review segment for the party now failing to cooperate"

and the uncooperative party failed to respond to the Department's questionnaires altogether; (2) evidence that a respondent's merchandise was liquidated at a particular rate is not probative of its commercial reality unless it can be shown that the entries were of subject merchandise; (3) because at the time of importation importers are unaware of what their ultimate liquidation rates will be, liquidation rates are not probative of an importer's commercial reality during the POR; (4) it is Commerce's "obligation to corroborate secondary information using independent sources" and build the record for that purpose, "not . . . the interested parties who are normally responsible for generating the administrative record"; and (5) the Department may not simply rely on a claimed absence of independent information to support its conclusion that corroboration is impracticable: "Rather, the Department must still seek relevant independent sources to corroborate its secondary information, and if it cannot locate such information, it must *describe the steps* that it has taken so that a reviewing Court can determine if the Department's finding that corroboration was not practicable is supported by substantial evidence and in accordance with law."

*Id.* at __, Slip Op. 16-35, at 11–12 (citations omitted). These holdings apply with equal force to the case at hand.

In addition, Since Hardware raises the same arguments as those addressed in the opinion for the related case, *Foshan Shunde*. The court finds no reason to revisit these arguments as it has already determined Commerce's assignment of the 72.29 percent AFA rate is supported by substantial evidence and is in accordance with law. *Id.* at __, Slip Op. 16-35, at 23 ("[D]espite Commerce's difficulty in locating independent sources to corroborate the remaining duty rates assigned over the course of the proceedings under the Order, it is evident that the Department has corroborated the 72.29 percent rate to the extent practicable. As the Department correctly observed, unlike the 157.68 percent rate that was repeatedly rejected by the court, in part because it was calculated for a single company during a prior review, this deficiency is less pronounced with the 72.29 percent rate. Rather, the 72.29 percent rate is derived from two calculated rates . . . , and was also the rate in effect for all companies which have demonstrated they are separate from the PRC-wide entity. . . . This rate is therefore reflective of Foshan Shunde's commercial reality because similar exporters of subject merchandise were able to, and actually did, import

subject merchandise into the United States at this rate. Furthermore, assigning an AFA rate to an uncooperative party that is lower than the separate rate assigned to cooperative respondents runs contrary to the purpose of the AFA statute—to incentivize future compliance on the part of uncooperative respondents." (internal quotation marks and citations omitted)). Accordingly, Commerce's Fourth Remand Results are sustained.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Department of Commerce's Fourth Final Results of Redetermination Pursuant to Court Remand are sustained. Judgment will be entered accordingly.

Dated: April 28, 2016
New York, New York

/s/ Richard K. Eaton
_____
Richard K. Eaton